SurLira1, J.
The decision objected to in the case whs duly entered on the record, and the grounds of objection appear in the entry, and an exception to the decision was taken at the time by the plaintiff in error; the exception being duly noted at the end of the decision, as required by section 293 of the code.
The sole question presented for our consideration, therefore, is, whether the account, as made out and expressed in the paper-writing to effect a lien, was sufficiently definite to operate as a lien *124 for the $91.53 so found actually due as part of the $951.05 expressed in the account. It is provided by “ an act to create a lien in favor of mechanics,” etc., passed March 11, 1843, sec. 1:
“ That any person who shall perform labor, or furnish materials or machinery for constructing, altering, or repairing any boat, vessel, or other water-craft, or for erecting or repairing any house, mill, manufactory, or other building, or appurtenance, by virtue of a contract or agreement with the owner thereof, shall have a lien, to secure the payment of the same, upon such boat, vessel, or other water-craft, and upon such house, mill, manufactory, or other building or appurtenance, and the lot of land upon which the same shall stand.” 1 Curwen, 964.
It is also provided by section 7 of said act, as amended March 12, 1853, as follows:
“ That any person entitled to'a lien under this act shall make an account in writing of the item of labor, skill, material, and machinery furnished, or either of. them, as the case may be, and after making oath thereto, within *f'our months from the time of performing such labor and skill, or furnishing such material and machinery, shall file the same in the recorder’s office of the county in which such labor, skill, and materials shall have been furnished; which account, so made and filed, shall be recorded in a separate book, to be provided by the recorder for that purpose, and shall, from the commencement of such labor or the furnishing of such materials, and for two years after the completion of such labor, or the furnishing of such materials, operate as a lien on the several descriptions of structures and buildings, and the lots on which they stand, in the first section of this act named. When any labor has been done, or materials furnished, as provided, on a written contract, the same, or a copy thereof, shall be filed with the account heroin required.” 3 Curwen, 2201.
Section 7, before amended, read as follows:
“ That any person entitled to a lien under this act, shall make an account in writing of the items of labor, skill, materials, and machinery furnished, or either of them, as the case may be, and after making oath thereto within four months from the time of performing such labor and skill, or furnishing such materials and machinery, shall file the same in the recorder’s office of the county in which such labor, skill, and materials, shall have been furnished, which account, so made and filed, shall be recorded in a separates *125 book to be provided by the recorder for that purpose, and shall for two years after the commencement of such labor, or the furnishing of such materials, operate as a lien on the several descriptions of structures and buildings, and the lots on which they stand, in the first section of this act named. When any labor has been done, or material furnished, or provided, on a written contract, the same, or a copy thereof, shall be filed with the account herein required.” 2 Curwen, 966.
It thus appears that the amendment of section seven *consisted in a change of the words items, materials, and descriptions, as used in the original section, into the words item, material, and description, as used in the amendatory section; and also by changing the limitation of the continuance of the lien, as.follows: for the words “ and shall for two years after the commencement of such labor, or the furnishing such materials, operate as a lien,” substituting the following: “ and for two years after the completion of such labor, or the furnishing of such materials, operate as a lien.”
The equitable object of the statute is clearly expressed by the first section. It was to secure to the laborer his hire or reward for the construction or repair which he had made. The means devised was, to permit him who had, by labor, skill, or material contributed to constitute a permanent object of value, to hold proprietorship pro tanto therein, until paid the price thereof according to contract, if under contract, or otherwise according to the just value of such contribution.
Looking thus at the object of the statute, and perceiving it to be one of an equitable character and beneficent tendency, section seven being directory to the mode of securing the object of the statute, the same ought to be liberally construed, for the furtherance and attainment of such object. It is true that the provisions of section seven are important, and indeed necessary in many cases . to secure the rights of the public. For it could not be reg-arded either equitable or just to suffer such liens to be enforced against strangers, who had purchased the property without any notice thereof, and had paid the price in confidence of a good and indcfeasable title as indicated by the public records. The object of the provisions of section seven was, therefore, to perfect the equities of the lien against third persons as well as the owner, and to protect the rights of such third persons by giving them reasonable notice of such lien. What then was the notice ^required by *126 section seven, before amended in its most obvious and comprehensive sense ?
In the first place, it is to be remarked that no written notice is required in favor of the lien while the construction or repair is being made, or the material being delivered, or for some months thereafter. The fact of the construction, or repair, or delivery of materials being- made in such case and for such time, is a constructive notice to third persons, and strangers must take notice of the same at their peril, the same as of the rights of actual occupants of the premises. But after the expiration of four months, and the making of such structure, repair, or contribution of material is no longer recent, without other notice than such constructive notice, the lien should terminate. To give the lien further extension, the statute then required “an account in writing of the items,” verified and filed and recorded in the recorder’s office of the county. Nothing but the fact of the structure, repair, or material furnished, previous to the expiration of the four months, was required to show the fact and amount of the lien; nor is anything stated as to the form of the account to be made. It was only provided that the person entitled to the lien given by section one' “ shall make an account in writing of the items of labor, skill, materials,” etc., as the case might be. It was not required that the same should be made in any particular form, nor that the amount due should be particularly expressed, but only that the account should be verified and left for record in the recorder’s office.
It was therefore very properly held, under section seven, before amended, that where a mechanic undertakes and completes a building as an entire job, by the job, and for an entire price, he need not, in the account filed with the recorder, make a detailed statement of his labor and materials, but that he might express the same in a single item. Davis v. Hines, 6 Ohio St. 473. The language of the original section, however, being “items,” in the *plural, seems to have led to a doubt in the case above referred to (which arose in 1849), and perhaps in other cases, whether the language of section seven did not require a detailed statement. And that doubt was not removed by the judicial construction given in the case of Davis v. Hines, decided at the December term, 1856, on a claim before the amendment of March 12, 1853, of section seven was made. The change of the words “items” and “materials ” from the plural to the singular in the amendment, may *127 therefore well be supposed to have been made to remove such doubts, and in favor of a more liberal interpretation of the provision.
"We have no doubt therefore that the account in the present case was substantially within the old provision, as it is within the letter of the provision as amended.
The only object of requiring the account to be filed in the recorder’s office, would seem to be to notify those interested of the existence of the lien. And if so, an explicit statement of the nature and extent of such lien, and the date of its commencement, and consequently the extent of its continuance, would be all the facts in which a stranger could have any interest. But if otherwise, the spirit of the maxim, id cerium est quod cerium reddi potest, applicable to writings, would seem to extend to the subject-matter of this notice. Indeed, to hold that such a specification, “ 1854, December 22. To carpenter work on house as measured, $951.05,” is void for uncertainty, would open a wide door for conjecture, and leave everything too doubtful, under this beneficent statute, to afford any certain benefits. In many cases it would be impossible to specify the various items in detail. In the very case under consideration, probably only the different measurements had been preserved. Perhaps it might, even at the time of doing the work, have been impossible to use any other as explicit a representation of the work done. But be that as it may, the statement of the account is both within the *spirit and letter of the statute, and is, as we think, sufficiently explicit.
The fact of the amount claimed to remain due upon the account being stated at $951.05, when in fact there appears to have been only $891.53, very obviously can be no objection to the goodness of the account to secure a lien for the amount actually due. That the greater includes the less is a conclusive answer to this objection. There is no pretense of any fraudulent misrepresentation in relation to the amount due on the account. If the amount stated had been the less sum and the amount actually due the larger, a stranger, who had acted upon faith of the statement made in. the purchase of the property, and who had paid the purchase money, except such less sum might, with some seeming propriety, in such case object to paying the excess over the sum so stated.
But it is sufficient to say that, for the reasons stated, we think the Superior Court erred in holding the account, as stated, insuf *128 ficiont, and the judgment óf that court is therefore reversed, and the cause remanded.

Judgment accordingly.

Brinkerhorr, C. J., and Scott, Peck, and G-holson, JJ., concurred.